**[J-5-2019][M.O. - Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| GAMESA ENERGY USA, LLC AND GAMESA TECHNOLOGY CORPORATION INC., | : | No. 28 EAP 2018 |
| | : | |
| | : | Appeal from the Judgment of Superior |
| | : | Court entered on 3/19/18 at No. 1635 |
| Appellants | : | EDA 2016 affirming in part and |
| | : | reversing in part the order entered on |
| | : | 5/20/16 in the Court of Common Pleas, |
| v. | : | Philadelphia County, Civil Division at |
| | : | No. 03678 March Term, 2013 |
| | : | |
| TEN PENN CENTER ASSOCIATES, L.P. | : | |
| AND SAP V TEN PENN CENTER NF G.P. | : | |
| L.L.C., | : | |
| | : | |
| Appellees | : | ARGUED:  March 5, 2019 |

*CONCURRING OPINION*

**CHIEF JUSTICE SAYLOR**                    **DECIDED:  September 26, 2019**

As concerns the main legal issue presented for review -- "[m]ay a litigant simultaneously pursue inconsistent alternative remedies in a civil action in Pennsylvania prior to the entry of final judgment" -- I am more sympathetic to Gamesa's policy-based argument than the majority appears to be.   To my mind, it is troublesome that a non-breaching party to a contract must be presented with options that are "very risky and highly disadvantageous to them."  Majority Opinion, *slip op.* at 28.  Indeed, I saw this case as an opportunity to consider whether appropriate adjustments should be made to the law to ameliorate the dilemma faced by non-breaching parties.  *Accord Gamesa Energy USA, LLC v. Ten Penn Center Assocs.*, 181 A.3d 1188, 1196 (Pa. Super. 2018) (Stevens, P.J.E., concurring).

That said, there is substantial force to the majority's position that the practice of generally forcing an election of remedies that would foreclose retroactive termination or rescission upon continued performance should remain extant.[1]  In this regard, it seems to me that Gamesa simply has not done enough to demonstrate, empirically, that the net consequences of a modification would not be harmful.  Given the social-policy ramifications and the substantive-law nexus, I also conclude that the legislative forum would be more suitable for the consideration of potential reforms.

I would find an exception to this general rule, however, applicable to instances in which the non-breaching party continues to be denied the benefit of its bargain during the period of its own continuing performance.  One who makes an election to continue to fulfill their own contractual commitments after a breach by the other party has a right to expect mutual performance going forward.  Presently, however, the trial court found that Ten Penn Center continued to act in a manner that deprived Gamesa of material benefits from the lease.  *See, e.g.*, Findings of Fact and Conclusions of Law dated Feb. 23, 2016, in *Gamesa Energy USA, LLC v. Ten Penn Center Assocs., L.P.*, No. 03678

---

[1] As Ten Penn Center relates, the notion of a "retroactive termination," as contemplated by Gamesa's prayer for relief, is substantially problematic.  *See* Brief for Appellees at 33 n.17.

In my view, it would be preferable to envision any remedy invalidating a contract retroactively as a rescission, and to treat any partial *quid pro quo* on account of a period of mutual performance as an offset to the restitutionary remedy.  And while Ten Penn Center correctly explains that the remedy of unjust enrichment (as pled by Gamesa) is not directly implicated in cases in which the litigants are parties to a written agreement, *see* Brief for Appellees at 20 n.11, the concept of unjust enrichment is also embedded in the remedy of restitution, which may be available in cases arising out of express contracts.  *See* RESTATEMENT (SECOND) OF CONTRACTS §344, cmt. d (1981).  That said, since the outcome may be substantively the same, it does not seem to me that Gamesa's approaches in the above respects should necessarily be treated as fatal pleading defects.

Mar. Term 2013, at COL ¶3 (C.P. Phila.) ("Ten Penn Center prevented Gamesa from obtaining any additional subtenant and did so while also collecting rent."). Since the Superior Court disregarded this determination without any supporting analysis,[2] I was initially inclined to favor remanding the case for that court to assess whether this finding is supported by the record and legally correct.

Nevertheless, I conclude that there are simply too many entanglements involved here on account of Gamesa's continued performance militating against the affordance of a rescissionary remedy. By way of example, I find resonance in Ten Penn Center's complaint about the trial court's extraordinary directive establishing a "judicially-created-and-imposed contract between Viridity and Ten [Penn Center]." Brief for Appellees at 15. While I have some differences with the details, I support the majority's ultimate determination that Gamesa's continued performance coupled with the involvement of third parties relegated it exclusively to the course of proving its claim for damages for Ten Penn Center's breach of contract.

---

[2] I recognize that the Superior Court opined that "all of the evidence points to [Gamesa's] continued benefit from the terms of the Lease following summer 2012." *Gamesa*, 181 A.3d at 1195. However, the court did not so much as consider the trial court's findings to the contrary, at least on account of Ten Penn Center's continuing to maintain that Gamesa remained in default under the Lease. According to the trial court, Ten Penn Center's conduct in this regard undermined Gamesa's ability to effectuate subleases. *See* Findings of Fact and Conclusions of Law in *Gamesa*, No. 03678 Mar. Term 2013, at FOF ¶¶23-25, COL ¶3.